IN THE UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF MARYLAND
NORTHERN DIVISION

UNITED STATES OF AMERICA,       *

    Plaintiff,       *

v                                                    CIVIL ACTION NO: WDQ-02-2816

ONE 1993 CADILLAC SEVILLE STS,

ONE 1997 FORD EXPEDITION, and   *

$20,222.00 U.S. CURRENCY

    Defendants       *

*       *   *   *   *   *

## MEMORANDUM OPINION AND ORDER

The claimant in this case contests the forfeiture of one 1993 Cadillac Seville STS, one 1997 Ford Expedition, and $20,222.00 in U.S. Currency ("the property").

### BACKGROUND

On March 12, 2001, police raided Monroe Harrod's ("Harrod") residence and seized cocaine, a digital scale, and the property.

On April 27, 2001, the Drug Enforcement Administration ("DEA") sent, return receipt requested, notice of the administrative seizure of the property to Harrod's former residences, several prisons, and two attorneys who represented Harrod. *See* Government's Memorandum to the Court Relative to the Notice Requirements in Civil Forfeiture Actions ("Govt. Memo"), attachments. The notices sent to the attorneys were delivered - - the rest were returned undelivered. Govt. Memo at 3. The first attorney noticed was initially appointed to represent Harrod; the second was defense counsel of record in Harrod's related prosecution. The notice informed Harrod that he had until June 1, 2001, to contest the pending administrative forfeiture. Govt. Memo, attachment 1.

On November 13, 2001, Harrod pled guilty to a violation of 21 U.S.C. § 846. On February 6, 2001, he was sentenced to 240 months imprisonment in the Federal Bureau of Prisons.

On July 10, 2002, the DEA received Harrod's claim. *See* Government's Cross Motion for Summary Judgment, Ex. D. On August 23, 2002, the government commenced this action by filing a verified complaint against the property. The complaint was served upon Harrod on August 26, 2002. Plaintiff's Rebuttal to the Government's Notice Requirements in Civil Forfeiture Action ("Rebuttal"), Exhibit A.

Harrod filed a claim and answer on December 26, 2002, and asserted that he had not been given proper notice of the administrative seizure. Response to Government's Amended Complain[t] for Forfeiture ("Answer"), at 8.[1] The claim and answer also alleged that the government's delay in seeking the forfeiture had deprived him of due process. *Id.* After the government's motion for summary judgment was denied on February 10, 2003, a bench trial was held on June 10, 2003.

At that trial, Detective William Davis, of the Annapolis City Police Department testified. Davis specializes in asset forfeiture investigations and investigative support for the criminal investigation section. He worked with Detective Kenny Brown, DEA Special Agent Robert Johnson and others in the investigation of Monroe Harrod. He subpoenaed financial records for Harrod and his business Harrod's Towing. He examined tax records and other financial documents. He was unable to locate any bank records for Harrod. The Internal Revenue Service certified that Harrod filed no returns for 1996, 1997, 1998, 1999, or 2000. Similarly, Maryland State Controller's revenue administration found no returns for Mr. Harrod from 1995 through the year 2000. For his business, Harrod's Towing, no tax returns were filed from 1995 through 2000. State income tax records for Rhonda Cormier, Harrod's girlfriend, indicated her 1997 total income was $17,759.00, her 1998 income was $20,457, her 1999 income was $25,207, and her 2000 income was $22,652.

DEA Special Agent Robert Johnson testified that he had identified Harrod as a potential HIDTA task force target. An investigation led to a search warrant for 912 Washburn Avenue, Baltimore, Maryland, the home of Harrod and Cormier. The agents had intelligence information that Harrod and his associates were returning from Florida with cocaine. On March 12, 2001, agents observed a maroon Expedition arrive at 912 Washburn Avenue. A search of the residence yielded crack cocaine (from the false bottom of a night stand), a digital scale, money (from the false bottom of another night stand) and firearms. Harrod told the agents he had felt relief after his arrest. He said he had become involved in the drug trade to support his family because he could not earn enough money through legitimate means. Agent Johnson also obtained records indicating that Harrod and Cormier were the registered owners of the 1993 Cadillac and the 1997 Ford Expedition. *See* Government Exhibits ("Gov. Ex.") 12 B and 12C.

Johnson also identified surveillance photographs from an August 2000 traffic stop by North Carolina Highway Patrol officers assigned to patrol Interstate 95. Pictured in the photographs are Harrod and Anthony Moulden. Johnson also identified hotel records from

---

[1] The government has not challenged the timeliness of this answer

Florida in the names of Moulden and other associates of Harrod

Anthony Lionel Moulden testified pursuant to a cooperation agreement with the government. He has known Harrod for 30 years. In the past ten years he has been involved with Harrod in selling drugs. He made more than ten trips to southern Florida to buy narcotics. The price of cocaine varied from $20,000 to $45,000 per kilogram of powder cocaine. Harrod used a Nissan Maxima with storage places behind the passenger seat and the driver seat. In the storage places was hidden "money going down and kilogram of cocaine coming up from Florida." The 1993 Cadillac and the 1997 Ford Expedition were used on trips to Florida to bring back drugs.

Monroe Harrod, Sr., the claimant's father, testified. He knew the claimant to operate tow trucks and a dump truck; he also knew that the claimant did welding and mechanic's work. The claimant's sister, Regina Demetria Chew, also testified. She knew the claimant to do a lot of different types of work including Harrod's towing, cutting hair, work on cars, work on carpet or walls. Ms. Chew also testified that she had lent her brother almost $11,000 in January 2001 and $4,500 but did not recall the date.

Moulden was recalled by the claimant and testified that he had known the claimant to use his personal vehicles in the drug trade.

The claimant testified that he used to cut fire wood, do engineering work, weld, was in the auto body business, painted cars, and operated a tow truck. He estimated that he earned about $16,000 in 1996 and about $35,000 to almost $40,000 between 1997 and 1998. He testified that his most recent involvement in the drug business began near the end of 1999. He also testified that the vehicles had been bought by Cormier and himself. He denied ever using any of his vehicles for anything illegal. He offered the almost $10,000 debt remaining on the Expedition as proof that he had made little money from drug sales. Defendant's Exhibit 14. He acknowledged that $12,527 was found in a false bottomed drawer and $7,000 was found in a boot in his home. Apparently $695 was recovered from his daughter's piggy bank. Approximately $1,645 was recovered from one of his associates.

The claimant acknowledged that he has used the secret compartment in the Maxima to take money to, and bring drugs from, Florida. He also testified that more than one vehicle was used on his drug trips to Florida because if both vehicles were speeding, police would stop the lead, or decoy, vehicle–in which no drugs were secreted-- rather than the vehicle carrying contraband. He also insisted he had never bought more than one and one-half kilograms there. Depending on the time of year, cocaine costs from $15,000 to $20,000.

3

## II. THE NOTICE ISSUE

Section 983 of Title 18 of the U.S. Code ("§ 983") and Supplemental Rule of Federal Procedure C ("Rule C") govern administrative and judicial *in rem* actions filed pursuant to 21 U.S.C. § 881 (a)(6). Though § 983 and Rule C provide certain notice requirements, due process considerations are also relevant. *See United States v. Borromeo*, 945 F.2d 750, 752 (4th Cir. 1991).

The government argues that after commencing an administrative forfeiture, it properly noticed Harrod by sending notice to: (1) former residences; (2) prisons he may have been located at; and (3) two attorneys, one of whom represented him in a the pending criminal matter related to the seizure. Govt. Memo at 2-3.

Due process required that Harrod, a reasonably ascertainable claimant of the property, receive more than constructive notice of the pending forfeiture. *Borromeo*, 945 F.2d at 752. Because the government commenced the administrative forfeiture while Harrod was in its custody, service at his residential addresses was constitutionally deficient. *United States v. Minor*, 228 F.3d 352, 357 (4th Cir. 2000).

Although the Fourth Circuit does not require actual notice to an incarcerated property owner, due process has not been satisfied when mail directed to the facility holding the incarcerated owner is returned undelivered. *See Minor*, 228 F.3d at 358. Service of the two attorneys did not satisfy due process under these circumstances. Notice sent to an attorney is only proper when the lawyer is authorized to handle the "precise task" at issue. *United States v. $184,505.01 in U.S. Currency*, 72 F.3d 1160, 1164 n.10 (3rd Cir. 1995).

Any deficiency in notice of the administrative forfeiture is irrelevant to the notice required for this proceeding. *See Garcia v. Meza*, 235 F.3d 287, 292 (7th Cir. 2000); *and United States v. United States Currency in the Amount of $2,857.00*, 754 F.2d 208, 210-212 (7th Cir. 1985)(administrative and judicial forfeitures are separate proceedings).

This judicial proceeding commenced on August 23, 2002, when the government filed its verified complaint against the property. Harrod's Rebuttal indicates that he received notice of the judicial forfeiture proceeding on August 26, 2002. Rebuttal, Exhibit A. This notice complied with § 983 (3)(A) and Rule C.[2] The defective notice of the administrative proceedings does not affect this judicial proceeding. *See Meza*, 235 F.3d at 292.

In his Answer, Harrod also argued that the delay between the March 12, 2001 seizure and August 23, 2002 filing of the present action deprived him of due process. *Id.* at 8. In *United States*

---

[2] The government has not asserted that Harrod lacks statutory standing to contest this forfeiture because his claim and answer were filed more than 30 days after service of the complaint. *See United States v. Cambio Exacto, S.A.*, 166 F.3d 522, 526 (2d Cir. 1998)(strict compliance with Rule C(6) required to demonstrate statutory standing to contest forfeiture).

4

*v. Eight Thousand Eight Hundred & Fifty Dollars in United States Currency* ("*$8,850 in U.S. Currency*"), the Supreme Court held that unreasonably delayed forfeitures may violate a claimant's right to due process. The Court indicated that the speedy trial analysis of *Barker v. Wingo*, 407 U.S. 514 (1972), was controlling. 461 U.S. 555, 563-64 (1983). That analysis requires the Court to consider four factors: (1)length of delay; (2) reason for delay; (3) defendant's assertion of his property right; and (4) prejudice to the defendant. *Id.* at 564.

Absent justification, the government's delay of nearly 16 months between attempting to notice Harrod of pending administrative proceedings and bringing this action may be unreasonable. *See United States v. Turner*, 933 F.2d 240, 246 (4th Cir. 1991)(16 months may be unreasonable). Typically, the government justifies delays on one of three bases: (1) ongoing investigation; (2) the desire to wait for a related criminal trial to conclude; or (3) reliance on a completed administrative forfeiture.

The record does not indicate that any continuing investigation occurred after the seizure on March 12, 2001. The government may have validly opted to wait until the criminal proceeding concluded before seeking forfeiture. However, the judicial action was not brought until August 23, 2002, 9 months after the guilty plea.

Had an administrative forfeiture been completed, the government would be entitled to rely upon it until a claimant attacked its validity. *Turner*, 933 F.2d at 246. However, an administrative forfeiture was never completed.

The government has not met its burden of explaining or justifying its apparent failure to promptly administratively or judicially forfeit the property. *$23,407.69 in U.S. Currency*, 715 F.2d at 165-66 (government must explain and justify substantial delays in seeking forfeiture of seized property). Therefore, the first two factors, length of, and reason for, the delay, favor the dismissal of the judicial action.

Harrod's substantial delay in filing his claim indicates a speedy hearing was not a priority. *$8,850 in U.S. Currency*, 461 U.S. at 569 ( failure to invoke judicial remedies is an indication that the claimant did not desire an early judicial hearing).

The fourth factor also weighs against Harrod. Prejudice usually requires a showing that the delay hampered the claimant from presenting a previously available defense. *See $8,850 in U.S. Currency*, 461 U.S. at 569. Harrod has not offered such evidence. Accordingly, the government's delay in seeking the administrative forfeiture in this case does not require the dismissal of the action.

### III  HE MERITS

Under 21 U.S.C. § 881(a)(4), "[a]ll conveyances . . . used . . . to transport, or in any manner to facilitate the transportation, sale receipt, possession, or concealment" of controlled substances are subject to forfeiture to the United States. Similarly, "all proceeds traceable" from the sales of

5

controlled substances are also subject to seizure. 21 U.S.C. § 881(a)(6).

The testimony of Moulden establishes that the Ford Expedition and the Cadillac were used during the defendant's Florida drug expeditions. It does not matter whether either car was actually used to transport drugs or money; use of the vehicles as decoys was a sufficient facilitation of the transport of controlled substances as to bring them within the forfeiture provisions of § 881(a)(4). *See United States v. One 1979 Mercury Cougar XR-7*, 666 F.2d 228, 230 (5th Cir. 1982)(forfeiture appropriate if vehicle is used in any way to facilitate sale or transportation of controlled substances) and *United States v. One Ford 1987F-350 4 x 4 Pickup*, 739 F. Supp. 554, 557 (D. Kan. 1990)(facilitate encompasses making prohibited conduct less difficult or more free from obstruction or hindrance.).

Although the claimant has demonstrated his energy and industry, the various jobs he held are an unlikely source of most of the currency found in his residence. It is more probable, given the testimony about his drug venture, that the bulk of the money–exclusive of the $695 found in his daughter's bank–are derived from that venture.

## IV. CONCLUSION

For all the foregoing reasons, the Court will direct the Clerk to enter judgment for the United States, forfeiting to the United States, the Cadillac, the Expedition and $19,527.

Date 7/16/3

William D. Quarles, Jr.
United States District Judge

6